JOHN WATSON, APPELLANT, v. GEORGE L. COREY, RESPONDENT. (1).

C. D. HAYS, APPELLANT, v. GEORGE L. COREY, RESPONDENT.

MUNICIPAL CORPORATIONS. — INCORPORATION AND RE-INCORPORA-
TION.—CONSTRUCTION OF STATUTES.—Chap. XI. Compiled Laws,
1888, is entitled " An act providing for the incorporation of
cities." The first five sections of Article I of that act provide
for the incorporation of new cities. The next five sections pro-
vide for cities already incorporated re-incorporating under this
act. Section 11 declares cities incorporated under this act cor-
porations with the usual attributes of corporations and power to
exercise all the powers conferred by this act. Sections 12 and 13
provide for the continuance of property and of the efficacy of ord-
inances from incorporated to re-incorporated cities. Sections 14
and 15 divide all municipal corporations existing in the territory
into three classes, and provide a way for ascertaining and fixing
the classes by census, and proclamation by the Governor, and the
manner in which a city passes from the second or third class to
the second or first. Section 16 divides all cities of the first and
second class into five wards. Section 17 vests the government of
cities of the first class in a mayor and fifteen councilmen, three
from each ward, and provides that mayor shall be elected at large
and councilmen by wards. Section 18 provides the same things
exactly for cities of the second class, except that there shall be
two councilmen from each ward. Section 19 provides for govern-
ment of cities of the third class. Section 1 of Article VI of
same act provides that there shall be elected in cities of the first
class, a mayor elected at large and three councilmen for each
ward, elected by wards; in cities of the second class the same
excepting it is two councilmen elected by wards: in third class
mayor and seven councilmen all elected at large, provided; that
in the case of any incorporated city in which at the time
of the passage of this act, the members of the board of
aldermen or council are elected from a district or ward, the
provisions of this section shall not apply, nor shall this act, in
any manner interfere with the existing qualifications of the elec-
tors or officers or with the manner of selecting the officers. Sec-
tion 5 of Article XX provides that Section 1 of Article XI, but,
was silent as to sections of Article I, should apply to all incorpor-
ated cities; held that Sections 16, 17, 18 and 19 do not apply to

(1)   Overruled, *People* v. *Page, infra.*

cities already incorporated until they are re-incorporated under this act—held further, that the proviso to Section 1 of Article VI was intended as to the latter part to apply to all cities already incorporated and not alone to cities where the aldermen or councillors were elected from district or ward.

ID.—POWER TO PASS ORDINANCES.—In the case above, the municipal corporation of the second class, even after ascertainment of census, and proclamation of its class by the Governor, had no power to pass an ordinance dividing the city into five wards, and providing for registering of votes by wards.

CONSTITUTIONAL LAW.—ENACTING CLAUSE OF BILL.—In the absence of a constitutional requirement, a law passed without any enacting clause is valid.

Appeal from an order of the district court of the first district quashing an alternative writ of *mandamus.*

This action arose in the following manner: George L. Corey registrar of voters for Ogden City refused to register a certain voter by his municipal ward, but stated that he was already registered, which was the fact, as a voter at large in the city. The act providing for the incorporation of cities was passed March 8, 1888. On November 22, 1888, the city council of Ogden passed an ordinance dividing Ogden City into five wards and providing for the registration of voters in each ward. The application to register was made under this ordinance and the application was refused by the registrar. The ordinance also provided for the election of councilmen by wards, two from each ward, following the language of the legislative act above. The act so far as material is set forth at length in the *syllabus.*

The opinion of the lower court was as follows:

"This is a hearing upon a motion to quash an alternative writ of *mandamus* heretofore issued out of this court. The plaintiff is a resident and qualified elector residing in the second ward of the city of Ogden; the defendant is registrar of said city, appointed by the Utah commission. The writ alleges that the city council of Ogden City, on the 22d day of November, 1888, duly passed an ordinance, section 2 of which reads as follows: .

"'SEC. 2. There shall be held in said city on the second Monday in February, A. D. 1889, and bi-ennially thereafter, an election for the following officers, viz: . A mayor,

a recorder, a treasurer, an assessor and collector, and a marshal; to be elected by the electors of each municipal ward; whose term of office shall be two years, and until their successors are elected and qualified to office. Every legally qualified and duly registered voter shall be entitled to vote only in the ward in which he resides.' There are various other provisions of the ordinance dividing the city into wards, and providing for the registration of electors in the various wards thereof. The petition further alleges that the plaintiff made application to the defendant to be registered as such, offering proof that he was duly qualified; that the defendant refused to so register him, but offered to register him as a voter in the city. The defendant now moves to quash this writ. The plaintiff claims that the ordinance above referred to was passed by the city council in pursuance of Chapter XI of the Compiled Laws of Utah, of 1888, entitled 'An act providing for the incorporation of cities,' and claims that said act gives authority to the council to pass the ordinance. The defendant claims—*First*, that said act of the legislature is wholly void, for the reason that it contains no enacting clause whatever; *Second*, that if said act is valid, it does not authorize the ordinance in question; *Third*, that said act is invalid, because it is in conflict with the act of congress commonly known as the 'Edmunds Act,' and particularly Section 9 of said act.

"The act of the legislature above referred to contains no enacting clause whatever, and the defendant insists that this invalidates the act. The claim is that it does not appear upon its face to have been enacted by any authority. The original act on file in the office of the Secretary of the territory is signed by the presiding officers of the two houses and the Governor, in the usual way. Various authorities have been cited to me upon this proposition, and I have examined them with such care as the limited time would permit. There is no doubt that it is the almost universal custom in enacting laws to preface them with a statement of the authority enacting. In England although not required by any written constitution, it is the almost universal custom; and in this country nearly all the states

in their state constitutions prescribe the form in which it
shall be stated; but in the constitution of the United States,
and in the laws relating to this territory, there is no pro-
vision expressly requiring an enacting clause, or prescrib-
ing any form thereof; and yet the practice has been almost·
universal in all of the territories to make use of one.   The
most interesting case upon this subject to which my atten-·
tion has been called is what is known as 'The Seat of Gov-
ernment case,' heard in the supreme court of the territory
of Washington, (1 Wash. T. 126).   In that case the valid-
ity of an act of the legislature was in question, locating the
seat of government of the territory, and was, like the act
in question, wholly destitute of an enacting clause.   The
Court, by a majority, held that the act was void; but Judge
Wyche dissented from that opinion in a very exhaustive
and able argument.   The case is an instructive one, not
only on account of the exhaustiveness with which it was
examined, and the ability displayed in the opinions ren-
dered, but also as a matter of history.   From it we learn
that one of the first acts ever passed in the territory of
Washington, and one which regulated the manner of select-
ing and summoning jurors and regulating various other
judicial matters was wholly wanting in an enacting clause,
but that its legality and validity were never questioned.
The dissenting opinion above referred to, reviews in detail
all the authorities upon the subject up to that time.   But
since that time various states have passed upon the subject.
Of course the question is not the same when it is presented ·
in a state court, where the constitution of the state expressly
provides for an enacting clause, and prescribes its form;
but by analogy they bear upon the question before us.
There seems to be two classes of opinions upon the sub-
ject.   In some states it is held that the constitution pre-
scribing the form of an enacting clause must be followed
literally, and that any departure from it invalidates the
act; in others, that the constitutional provision is but
directory, and, if substantially followed, is sufficient.   I
have not been able to examine the text of all the cases
upon this subject, but one which is quite in point (*Cape
Girardeau* v. *Riley*, 52 Mo., 424, also reported in 14 Amer.

Rep., 427) is at hand. In that case the constitution of Missouri provided what the style of the laws of the state should be, and the Court had before it an act in which the enacting clause was omitted; but they held that the provision of the constitution was merely directory, and that the want of an enacting clause would not invalidate it. The question is one that is not free from doubt, and I have not had the time and opportunity to examine it as exhaustively as should be done if this case was to wholly turn upon it; but, from the examination which I have been able to give it, I am of the opinion that the want of an enacting clause does not invalidate the act.

"The next question in order is the construction of the statute. The contention on the part of the city, which, by its counsel, has appeared and participated in this argument, is that the fair construction of the act grants the authority assumed to the common council; and this depends wholly on the question as to whether Section 18, Article I, applies to the city of Ogden, or as to whether it applies only to cities which are incorporated or reincorporated under the act. The act in question is one providing for the incorporation and re-incorporation of cities, and incidentally amending the charters of cities already in existence. The act bears evidence of hasty, if not careless, construction. The first five sections of Article I are general in their nature, and provide the manner in which territory not already incorporated in any city may incorporate under the act. Sections 6 to 9, inclusive, provide the manner in which cities may re-incorporate under the act. The balance of the sections of this article to 14 are of a general nature. Sections 14 and 15 provide that the municipal corporations now existing in the territory, and those thereafter organized, are divided into two classes, according to population. Section 16 commences the first provision in the act relating to municipal government. It is an entire change of subject, although not separated and divided by being set apart in a separate article; but Sections 16, 17, 18 and 19 all relate purely to city government, and they are the important sections of the act; they are the sections which establish the rule of electing, in certain

classes of the cities, certain of their officers by districts or wards. This court held, upon a matter recently before it, that Section 14 of Article I referred to cities already existing, and not incorporated or re-incorporated under the act; that it was the duty of the common council to take the steps necessary to ascertain the class to which the respective cities in the territory belong. I am confirmed in the opinion that I then had—that that section applies. By Section 6 of Article I it is provided that when the inhabitants of a city petition the common council to take steps to organize under the act, that the council shall call an election for that purpose, and give notice of the class to which it would belong if re-incorporated. That action certainly is to be taken before the re-incorporation, and the class to which the city belongs must be determined. Section 14 provides for that, and provides that the proclamation of the governor shall establish that fact; so that the common council, when they are petitioned for re-incorporation, have judicial knowledge of the class to which the city would belong, and could give the notice. Besides this there are various sections of this act which are made expressly applicable to cities already existing, which recognize the difference between the classes. In the city of Ogden the common council have performed the duty required by Section 14. The governor has issued his proclamation assigning the city to the second class, and it is now claimed that it becomes a city of the second class for all the purposes mentioned in the act, and that Section 18 of Article I applies. There is no doubt but that the city is a city of the second class, as classified in Section 14, for the various purposes enacted by this statute that are made applicable to cities already existing without re-incorporation. But it does not necessarily follow that every provision of this character referring to cities of the second class is applicable. So the question recurs: Do Sections 16, 17, 18 and 19 refer to, and are they made applicable to, cities not incorporated under the act? The first mention in this statute of cities already incorporated is in Section 6 of Article I. That section relates purely to such cities. The language of the section is: 'Any incorporated city or

town now existing in this Territory.' Section 7 is upon the same subject, follows it immediately, and says: 'The mayor of such city.   *   *   *'   Section 8 is upon the same subject, and has like reference; and 9 is the same; and there ends the subject, so far as corporations not incorporated under the act are concerned.  But the subject is dropped, and other matters are legislated upon.  We next come to this class of corporations in Section 14, and there the language is: 'The municipal corporations in this territory now existing;' plainly indicating, as plain as language can make it, that intention; but the subject upon which Section 14 enters is wholly dropped at the end of Section 15, and Section 16 enters upon a wholly new and independent subject and matter, to wit:  That of city government, and the language is: 'All incorporated cities of the first and second class;' and the language is the same to and including Section 18.  The claim of the city is that this language, following Section 14, plainly refers to the same corporations that are referred to in Section 14; but it is to be observed, as before stated, that that is a wholly new and independent subject, and this argument loses some of its force by that fact.  Section 5 of Article XX, being substantially the last section of the act, provides that the sections commencing with Article IV 'are hereby made ap plicable to all incorporated cities now organized in this Territory, and shall be construed to be cumulative and supplemental to the charters of said cities.'  But the sections under consideration are not mentioned.  The legislative habit in this act, when going from a subject foreign to this inquiry to the subject of incorporated cities already existing, of expressing that by referring to them as 'cities now existing in this Territory,' is fairly well established. Section 18 has not this language.  Again, when we come to Section 1 of Article VI, entitled 'Officers; their powers and duties,' there is a re-enactment of the principle contained in Sections 16, 17, 18, and 19 of Article I, and this section is one that is made expressly applicable by the last section of the act to cities already existing, and at the close of this section is this important proviso: 'Nor shall this act in any manner interfere with the existing qualifications

of the electors or officers, or with the manner of selecting the officers.'

"Ogden city, by its present charter, provides that its councilmen and aldermen shall be selected by the city at large.   Here is an express declaration in the act itself that it is not intended to change the manner of selecting officers in cities already existing, and this was no doubt added to this section in view of the fact that the section itself was made applicable to cities already existing.   If this is true, then most certainly it could not have been intended by the legislature that Section 18 should apply, because they are substantially the same.   Again, Article I, down to Section 16, is wholly of a general nature.   It does not in any manner relate to city government.   They are none of them such provisions as would be proper in a city charter; but, as before stated, with Section 16 begins the subject of municipal government.   The last section of the act before referred to goes back over this entire enactment relating to city government, and especially points out what parts thereof shall apply to cities already incorporated, and what parts thereof shall be construed to be cumulative and supplemental to the charters of said cities.   In all of the provisions of the act before those entering upon the subject of city government they provided by the language of the sections themselves as to what corporations they should apply; but they intended by this last section to point out such articles and such sections relating to city government as did apply.   Section 18 is one that applies to city government, and regulates city affairs, but is not mentioned in this section.   It is a well-understood rule of the construction of statutes that the express mention of one thing excludes its opposite.   Again, the most material difference between this act and the charters of the cities before existing in this Territory is the principle contained in Sections 16, 17, 18, and 19 of Article I.   The legislature was careful to provide that no incorporated city should become re-incorporated under the act without a vote of its inhabitants.   It would be strange, indeed, if they had provided that the inhabitants might vote upon the shadow, while they assumed to provide the substance for them.   There is still

another test, which to my mind is conclusive of what the legislature intended. No casual reader of this act, when he reads in Section 6 of Article I the provision, that, when the common council of a city call an election to determine the question as to whether it shall be re-incorporated under this act or not, they shall give notice of the class to which the city will belong if re-incorporated, will doubt for a moment that it was supposed by the legislature that the class to which the city belonged was one of the things that the electors should know; because it might determine in their minds the question as to whether they would re-incorporate or not. It goes upon the theory that, if they re-incorporate, their condition and the government would have to depend somewhat upon the question as to which class they belonged; and yet, if the construction which is contended for by the city in this case is correct, then there is not one provision of this act, from first to last, which recognizes any difference in classes but what already applies to every city in the Territory. No one single reference can be found in the act to the subject of the classification of cities, or the difference in their management, but what already applies, if the contention of the city is correct.

" It is plain to me, and it must be to every casual reader of this act, that the question upon the re-incorporation, as to which class the city would belong, was one of substance. I am clearly of the opinion that it was never intended by the legislature that Sections 16, 17, 18, and 19 should apply to cities already incorporated until they took the necessary steps under Section 6 to re-incorporate. In the argument some stress was laid upon the fact that the common council of the city had already taken the steps provided for in Section 14, to have the class of the city determined, as though it was in the province of the council itself to say whether these sections should apply or not. The language of Section 14 absolutely classifies the cities. They stand classified by the legislature itself, for all the purposes to which this act refers to them, but for no other, and it depends in no wise upon what the common council may or may not do. In taking a census of the city, and ascertaining the number of inhabitants, they merely ascertain a fact which as-

signs the city by operation of law to one or other of the classes; and when they become re-incorporated, then such provisions of this act are made applicable to cities incorporated and re-incorporated under it as are applicable to it, in addition to those which are made applicable, whether they re-incorporate or not, and the sections here in controversy, in my judgment, are among them.

"This being the result at which this Court arrives, it becomes wholly immaterial to discuss the other subject as to whether this ordinance in various other of its provisions is repugnant to the "Edmunds Act" or not. According to this view, there is no authority in this city to register voters in precincts and wards, and the plaintiff only complains that he has not been registered in the Second ward of this city—the registrar offering to register him as a voter of the city at large, and this is all that he is entitled to. The motion to quash should be granted, and the writ dismissed."

*Mr. Charles C. Richards* and *Mr. H. H. Rolapp*, for appellant, John Watson.

*Mr. N. Tanner*, *Jr.*, for the city of Ogden.

*Mr. A. R. Heywood* and *Mr. P. H. Emerson*, for appellant, C. D. Hays.

*Messrs. Smith and Smith* and *Mr. James N. Kimball*, for the respondent.

JUDD, J.:

These cases come to this court by appeal from the first district court at Ogden city, and involve the validity of an ordinance of said city, adopted by its council November 22, 1888. Elaborate arguments have been made by the counsel for the respective sides, to which we have listened with much care, and to which we have given full consideration. In the view we have taken of the case, it becomes unnecessary that we should extend this opinion. The learned judge before whom the cases were heard in the court be-

low has prepared a most careful and elaborate opinion, which, in our judgment, covers all the points in the cases. With this opinion we are entirely satisfied, and are content to adopt the same as the opinion of this court. The result is that the judgment of the lower court in these cases is in all things affirmed and the appeals dismissed.

SANDFORD, C. J., concurred.

BOREMAN, J., concurred, except that he thought there might be doubts as to whether Sections 14 and 15 referred to, were applicable to existing cities before they should have taken steps to re-incorporate under the law.